The next case we'll hear this morning is the United States v. Mosby, and Mr. Volchok, whenever you're ready, we'll hear from you. May it please the Court, Daniel Volchok for Marilyn Mosby. Your Honors, I'd like to start with our challenge to the jury instruction on venue at the mortgage fraud trial. The Supreme Court has repeatedly emphasized the importance of the venue right, one of only two rights so important that the framers put it in the Bill of Rights, even though it was already in the original Constitution. And this Court, to safeguard that right, has made clear that venue is proper only in a district in which an essential conduct element of the charged offense occurred. The instruction here was erroneous under that holding because it allowed jurors to find venue if, quote, any act in furtherance of the charged offense, unquote, occurred there. That phrase, any act in furtherance, is broader than essential conduct element. It includes preparatory acts. Well, it may, it may. It seems to me, if you read it in context, the crime is defined, in furtherance of the crime, is defined in the instructions relating to the four elements the Court instructed. And the charge that the Court gave was actually a question of whether it fairly stated the law. It apparently is a charge that district courts give. It's in the model instructions and several circuits have given that same instruction. So the question is whether there was an act in furtherance of an element of the crime. The crime was defined. The instruction didn't use the word elements, but it did refer to the crime charged. So, Your Honor, we know from this Court's decision in Reass that this, for this offense, this charge, venue is proper only where the alleged false statement, so here the gift letter, only where the alleged false statement was submitted or received, essentially where it was communicated. And there's no dispute that it was received outside of Maryland, so for venue to be proper here... Well, I don't know if you're going to the sufficiency of the evidence. No, I want to stay on... Yeah, because the sufficiency of the evidence goes to where Ms. Mosby was when she sent it. And the government argues that the circumstantial evidence shows that she was still in Maryland. Correct. And I want to stay on the instructional error, Your Honor. And Sterling held that a materially identical instruction, the government doesn't dispute that the two instructions were materially identical, Sterling concluded that that instruction, quote, erroneously allowed the jury to find venue based on a finding that any preparatory act occurred in the Eastern District of Virginia. End quote. That's page 245 of Sterling. Let me ask you this, counsel. As Judge Niemeyer indicated, this is a model instruction. Is your argument that the model instruction per se is invalid, or is it only invalid with respect to the mortgage fraud venue question? So it is certainly not per se invalid, Judge Agy. As I think your question was getting at, different crimes can have different proper venues. It depends, of course, how Congress defines the crime within the constraints of the constitutional venue, right? So it is certainly not the case, and both Riaz got into this and Sterling got into this in a footnote, that sometimes saying act in furtherance, Riaz talked particularly about conspiracy. Of course, conspiracy includes an overact in furtherance of the conspiracy. So there are certainly cases in which it is appropriate to talk about an act in furtherance. But I want to get to the point about the government's arguments regarding Sterling. First, it says it has two arguments. So first, it says that the part of Sterling we're relying on is dictum. I submit that's wrong for the reasons articulated in our reply brief, but it wouldn't matter even if it were right. Well, there were other instructions in Sterling that sort of saved the day there for the government. Absolutely, Judge Agy. There is no such instruction here. This gets to harmless error, which I do want to get to, but I have to persuade the court first that there was error. But there was no corrective instruction here, and I'll talk about it briefly. One of the instructions this court noted, the curative instructions in Sterling, the district court told jurors the defendant was entitled to be tried in the district where the offense was committed. There was not only no such instruction here, there was the opposite. Look at JA 2439, which is the jury instruction on venue. The court told the jurors that the government did not have to prove that the offense was committed in this district. I mean, that is directly contrary to the text of the Sixth Amendment and Article 3. So it shows the error and the lack of harmless error. But if I can conclude on Sterling and why we know that Sterling should be followed, even if this court is not bound to, the government says that act in furtherance excludes preparatory acts, that it is substantively equivalent to essential conduct element. If I submit just as a facial matter, as a matter of plain English, the notion that those two phrases are equivalent is wrong. Again, we know from Reass that the only place the essential conduct elements for this charge are where the offense was submitted. But preparatory acts, so we're talking about the gift letter, where the gift letter was submitted. But preparatory acts could include, for example, signing the gift letter, drafting the gift letter. And perhaps the best evidence refuting the government's equivalence argument is prosecutors' own closing argument to the jury. Pretty much their entire closing argument on venue was that they had proved an act in furtherance. And that's a phrase they used, as I'll illustrate in a moment. They said they had proved an act in furtherance in Maryland because they had shown preparatory acts there. So specifically, they said to the jury that we, quote, showed you that the mortgage applications were prepared in Baltimore. That's J.A. 2326. Their entire venue argument was about a minute in length. So if we were to agree with you on this point, what would the result be? A reversal of the mortgage fraud conviction. Of course, the forfeiture order would go with that. The government hasn't disputed that part of it. And the government would have the option to retry. On that charge? On the mortgage fraud charge, correct. The jury acquitted on the mortgage fraud count as to six of the seven alleged false statements. If this court were to reverse because of instructional error, it would be permitted to retry. But if I can just finish what the government said to the jury a few seconds after what I quoted a moment ago, still on J.A. 2326, they said the defendant's credit card transactions that took place at the time that she was preparing all of those loan documents, they were in Baltimore, end quote. And then a few seconds later, wrapping up J.A. 2327, top of that page, they said the defendant was in Baltimore when she took all these acts in furtherance, end quote, J.A. 2327. So even putting aside what I submit as a facial implausibility, as a matter of plain English, that act in furtherance and essential conduct element are the same, the government should not be heard to argue that the jurors here must have understood that act in furtherance excluded preparatory acts because they argued just the opposite. Very quickly on harmless error, we talked about it a moment ago. Government has not shown beyond a reasonable doubt that the instructional error here was harmless. For example, as we said in our opening brief, jurors could have found that the mortgage, that Ms. Mosby submitted the gift letter after she flew to Florida for the closing. The government didn't answer that argument in its brief. You don't need to go any further than that in order to conclude that the error was not harmless. I also talked about their closing argument a moment ago. I don't know how the court could conclude beyond a reasonable doubt in light of that closing argument that jurors would have found venue, again, beyond a reasonable doubt, based on the submission of the gift letter. The government didn't argue at all in closing about venue based on submission of the gift letter. So the error was, it was an erroneous instruction and it was harmful. If I could turn to the perjury trial, the district court reversibly erred by admitting evidence of how Ms. Mosby used the money that she withdrew from her retirement account. That evidence was inadmissible because it was irrelevant, and alternatively, if it was relevant, its probative value was substantially outweighed by the risks of jury confusion and unfair prejudice. So starting with relevance. It seems to me if the allegation is she withdrew it improperly with a mens rea of violating the law and lying, to show how she used the money certainly goes to support of that intent. I mean, it's part of the story. I took the money out to buy a Ferrari or something like that. So two responses, Judge Niemeyer. This court does not have before it a proper argument that the evidence was admissible because it was relevant to motive. The government did not argue that in opposing our motion in Limine below, and they presented it to this court only in a footnote. We've cited the precedent from this court that says that does not properly present an argument. It's part of the whole story, isn't it? I mean, you take out the money, a fraudulently, an allegation, you fraudulently take out money, and then you cut off the government and say what for, or was it actually spent, or was it, it's part of the story. In order to, and that's the last part of the sentence. I think that's a very dicey argument to make. No, Your Honor, because why you took the money out was not part of the element, was not part of this offense. It's part of the story to prove the offense, all the aspects, and it makes it more credible that it was fraudulent. If it's an extravagant or unnecessary expense or large expense or whatever. Judge Niemeyer, this court regularly and quite properly affirms convictions when an appellant does not properly preserve or present to this court even the most persuasive argument, and I submit it should do the same here with the government's forfeited motive argument. But even if the government disagrees, excuse me, if the court disagrees, I'm sure the government disagrees, if the court disagrees and thinks that the evidence is relevant, it still should have been excluded because its probative value was outweighed by the risks I mentioned a moment ago. And let me start with confusion of the issues. The district court never substantively addressed our confusion of the issues argument. And we've cited the precedent in our opening brief that that alone is an abuse of discretion. The government did not dispute that point in its brief. So the court doesn't need to go any further than that to find error. But if the court wants to go further and consider the government's argument, all that the government says is that the jurors are presumed to follow their instructions. But as we explained in both of our briefs, the jury was not instructed that there were no limits under the CARE Act as to how a person could use the money that they withdrew. So our confusion of the issues argument is unrebutted by both the district court and the government. And, of course, that's enough. You don't need to go further than that. But there's also the risk of unfair prejudice. Our briefs explain how the government used the use evidence throughout trial to try to secure convictions by fomenting wealth-based prejudice against Ms. Mosby, putting aside that she was not wealthy even before these prosecutions devastated her financially. And the government's argument in its brief is that we can't point to the closing argument in making this point because we don't challenge the closing argument as a stand-alone reversible error. Well, putting aside that the closing argument is not remotely the only place at trial that these appeals to wealth-based prejudice were made, the government doesn't offer any authority or any logic for the notion that we have to make one argument in order to make the other. Whether the closing argument is a stand-alone reversible error and whether it helps show the undue prejudice and hence the inadmissibility under 403 of the use evidence are two different arguments. Again, no logic or authority. Before you sit down, could you talk about the forfeiture issue? Absolutely, Your Honors. We have two arguments. Let me focus, if I could, in my time on the excessiveness argument. Even if the government had proved that the forfeiture here was statutorily authorized, we submit it hasn't, but it would still be unconstitutionally excessive. The amount of the forfeiture is excessively large at three-quarters of a million dollars. That amount is about 150 times the value of the gift letter, which is the only basis for the forfeiture. They usually measure, the Supreme Court usually measures excessiveness by looking at the maximum fine that could be imposed. What is the maximum fine in this case? One million dollars, Your Honor, and that is the government's principal response here. Well, they've said it and we've said it. That's one of the factors that we look at under an excessive forfeiture under the Eighth Amendment. This Court is obviously bound by Supreme Court precedent, Supreme Court holdings and holdings of this Court. I do not understand how it could be the case that Congress could, I mean, we're making a constitutional argument. I don't understand how you say Congress can wipe away the protections that the founders put in the Constitution against excessive fines by passing a statute. The analysis goes a little deeper than that. The analysis is the forfeiture has to be related in some sense to the gravity of the offense. And the gravity of the offense is measured by the penalty that can be imposed. And so the Supreme Court says if you can impose a penalty of a million dollars and you forfeit something that's worth $10,000, it's not excessive. That type of analysis. So it goes to the fundamentals of what is excessive, and they usually use that measurement. And I think we have, too. So, Judge Neimeyer, my time has expired. Yeah, why don't you answer that question? Yeah, I'll respond briefly. So as we explained in our brief, courts have insisted on an individualized assessment precisely because, sure, the maximum fine that could be imposed is one way that Congress communicates how serious this offense could potentially be. Obviously not every offense for which the maximum fine could be imposed. That is why courts have said you must look at the particular circumstances. I already discussed why I think the circumstances here don't permit it. The one additional circumstance is that the alleged false statement here did not harm anyone. With that, unless the court has further questions, I'll save time for rebuttal. Thank you. Mr. Bornstein? Good morning, Judge Neimeyer. And may it please the Court, David Bornstein on behalf of the United States. In 2020, Marilyn Mosby was one of the highest paid officials in the state of Maryland. She was also one of only three people in her office of more than 400 to take an early distribution from her retirement account under the CARES Act. In doing so, she committed perjury twice. She used the funds in order to make down payments on two Florida properties. And to make matters worse, to secure a mortgage on one of those properties, she then committed mortgage fraud. Two juries in several trials heard the evidence against her, both convicted. Now Ms. Mosby argues that her judgment of conviction is infected by numerous errors. They mostly acquitted. There were some convictions, but there were a lot of acquittals, too. When it came to the mortgage trial, there were seven false statements, and she was convicted of one. That is true, Judge Thacker. But I'd like to now, we have a lot of issues on the table. Unless any member of the panel would like me to begin elsewhere, I'll start where my friend did with the venue instruction. As Judge Neimeyer noted, this venue instruction is a model instruction. It's set forth verbatim from, it's taken verbatim from Judge Sand's treatise, Modern Federal Jury Instructions. It's a pattern jury instruction used by courts across the nation, including the Third and the Ninth Circuits. It is fully consistent with Supreme Court case law, which has said that venue is proper in any district in which any part of a crime can be proven to have been done. That was said in Smith, citing Ms. Mosby. Well, we have this older case, Reese, that says with respect to mortgage fraud, that preparatory acts, I'm kind of abbreviating now, preparatory acts are not sufficient to prove venue. And in that case, you know, of course this is before email and all that sort of stuff, the actual mortgage fraud document was physically delivered in Pennsylvania where the individual was charged in West Virginia. Yes, Your Honor. So even though that's a pretty old case, it's been cited with approval in Sterling and some others. And what is something of a question for me here is when I look at the jury instruction, which says in two places, whether in any act of furtherance of the crime occurred, that that would seem to permit the jury to conclude that a preparatory act alone, she drafted the letter but didn't deliver it, didn't send it, didn't email it, that they could find venue based on that act alone, which would seem to argue, at least for this mortgage fraud claim, that the model jury instruction was incorrect. So help me out here. Sure, Your Honor. First of all, we believe Reese is something of a red herring here because not even my friend is applying it properly. As you noted, Reese stands for the proposition, and it construed one of 13 statutes. That's a predecessor statute to Section 1014. Section 1014 took 13 prior statutes. Congress did in 1948. They consolidated them within 1014. Reese construed only one of the 13 statutes, and there it said, as Your Honor noted, that venue is only proper in a bank fraud case where the bank receives the false statement. Not even my friend is taking that pinched of a view on venue. He concedes that if Marilyn Mosby transmitted the gift letter from Maryland, venue is proper in Maryland. In fact, my friend has never argued that Michigan would be the only proper venue because Michigan is actually where the mortgage lender was located. So given that fact. Right, but whether or not she transmitted the letter from Maryland Yes, Your Honor. would seem to go more to the sufficiency of the evidence question because the jury instruction is a threshold, and even though there may be evidence that would be sufficient to find that there was distribution, that's not the same question we look at with the jury instruction, which is, is the jury free to convict or find this particular element based on something that's insufficient? I understand, and Your Honor, so the nub of my friend's argument is that any act in furtherance of language allows for the jury to find venue based upon preparatory acts. We disagree with that. One thing I would like to note, my friend relies entirely upon dictum in Sterling to prove the point. He actually never argues that it's persuasive, even in his reply. I disagree with it when you argued it in closing argument. Sorry, Your Honor? You said you disagreed that the jury instruction allows for preparatory acts to be considered. You argued that way in closing argument. Well, here I think the disagreement is whether or not preparing the false statement is preparatory. Under this court's case law, and I'm looking at Leaker in particular from 1981, this court has said when it comes to false statement claims, if the element is making a false statement, which it is under Section 1014, venue is proper wherever that false statement was prepared or drafted. That has long been the court's case law. I thought that was a case that involved mailing. Am I not remembering it correctly? No, that was one where I think the court said that there are three proper venues because there was the preparation in one district, there was the transmission to an intermediary in another district, and then there was the receipt by the final recipient in a third district. And did it involve mailing? I think that was the question. You're saying distribution. Was the distribution mailing? I do not recall it. The court defined the crime in this case to have four elements. Yes, Your Honor. And I don't know if anybody's challenged the four elements, but it seems to me that this case wouldn't be affected by the argument made because the first element is making a false statement relating to an application mortgage business. And the evidence shows circumstantially that she made that in Maryland. Yes. There's also an element that it was submitted to the mortgage lender. That's a distinct element. Therefore, that's a fourth element. So it seems to me there's no evidence in this case of any preparatory act. The only act that could be thought of as preparatory is signing the statement in Maryland or filling out the form in Maryland. Yes, Your Honor. Which is the government's argument that she did. And accordingly, the in furtherance of would be probably include that act. But that's on the very same page and the next page in connection with the venue. So I'm not sure that the model act runs afoul in this case. I think Judge Agee's questions really do call for it would be better, I would think, in furtherance of any element of the crime. If you added any element, it would be nicer, a lot nicer. Understood, Your Honor. And what you're saying, Judge Niemeyer, really goes to our harmlessness argument, which goes to the sufficiency of the evidence of venue, where if you look at the evidence, there's actually no evidence that venue was improper in Maryland. Before you get to that, you talked about Rios. Could you talk about our more recent Sterling opinion? Sure. So the problem with Sterling, as I was saying, Your Honor, is that the decision there was not only dictum, where it said that the in furtherance of language is ambiguous as to whether it allows a jury to find venue based upon preparatory acts, but it's also contrary to this court's earlier decision in 2005 in Ebersole. There's actually a footnote in Sterling about that. In Ebersole, this court looked at the exact same model instruction, approved it, and it did so while recognizing that the venue analysis must focus on essential conduct. What was the underlying crime in that case? Was it mortgage fraud? It was wire fraud, Your Honor. See, that's the real distinguishing factor here. This is mortgage fraud. I know, but the analysis didn't turn on that, Your Honor. The analysis didn't turn on the specific offense that was at issue there. It didn't say, you know, looking at this language, it will be one way or another. This is a general instruction that's used across the board. My friend's challenged. He's really trying to overturn the model instruction. It's not keyed in to Section 1014 itself. But I'd like to explain why the any in furtherance of language doesn't actually touch upon preparatory acts. And the easiest way to see this is looking at the conspiracy context. Every first-year law student knows there are two things to prove conspiracy, a conspiratorial agreement and an overt act in furtherance of that agreement. And it's always understood that the overt act is part of the agreement. There are different elements with conspiracy, and I think that conspiracy, aiding and abetting, and a lot of this instruction would appear to be fine. We just have this unique situation created by this Rios case that seems to question the model jury instruction only in the context of a mortgage fraud case. So, Judge Agee, I just want to point out that what I'm doing is I'm focusing on the language that my friend is contesting, any act in furtherance of. That language is also used in conspiracy context, and that language has always been understood as meaning that the act must follow the agreement. This court said so in Edwards in 1999, where it said that if the evidence showed that a mailing occurred before the scheme to defraud began, that mailing could not have been in furtherance of the scheme to defraud. The same thing happens in the conspiracy context, and against all of that, I think my friend bears a very high burden to argue that whenever a person hears any act in furtherance of, it can target preparatory acts. That's simply, again, not true in the conspiracy context, and it would be a sea change in the law for this court to hold otherwise. But I'd like to move on to our harmlessness argument. Any instructional error here was clearly... I don't want to belabor this, but do you think that Rios is just wrong? Yes. So we think Rios is wrong, and here's the clearest reason why. So Rios believed that when it came to the predecessor statute, which was bank fraud or a false statement to a bank, it consisted of a single act in a single place, which was the receipt by the bank of the false statement. That was 1938, I think, was Rios. In 1980... So you think it's... but it's... you agree it's precedent, but it's wrong? Is that what you're saying? And then it construed a different statute, and then when the U.S. Supreme Court construed Section 1014, which Congress enacted a decade after Rios was published, the Supreme Court said that there are actually only two elements to Section 1014, the making of a false statement with the intent to influence a mortgage lender. There was no requirement of receipt by the mortgage lender, and that directly abrogates Rios, which said that the essential element was something that they read into the statute, which is the receipt of the false statement. Rios may not be incorrect. It seems to me this in furtherance of is focusing on an element, and so if we look at the elements of any one of these offenses, it makes them all consistent. I agree, Your Honor. The Rios case required a receipt, whereas in this case it's the making is one of the elements. Yes. And the making is done by signing the form, and the Supreme Court made that clear also. It focused on the two elements. Yes. And so when you talk about venue and then you give the four elements here, it relates the two that in furtherance of one of the elements, and the element here is it says first that the defendant make a false statement or report relating to an application to a mortgage lending business. That's the first element. And so you have to make it, and the only way you make it is in writing by signing that document. Yes, absolutely, Your Honor. I'd also like to simply note, to be fair to my friend, Rios involves the same language, except that the Fourth Circuit in 1938 imported a textually a separate element, which is receipt by the lender and said that's the only element that matters. By 1982, the Supreme Court says we look at the text of the statute and there isn't that element in it, and that's why I think Rios is abrogated. One final point, Your Honor. If you look at the district court's decision when it used the model jury instruction, when it adopted it, that's at Joint Appendix page 2261 and 2262, the district court specifically said that it found that any act in furtherance of language meant any act within the contours of the offense. And I find it truly stunning that my friend will get up here, and this is what his argument hinges on, and he's never actually articulated it except maybe as a whole argument for the first time.  That's wrong. The district court told the jury that? No, Your Honor, because she thought it would. So the jury only heard what's here in the record, right? But the district court was talking about what she believed the plain language meant. Well, I don't know why that is relevant to what the district court actually instructed the jury. It's relevant because as I pointed out in the conspiracy context, this court, courts around the nation, juries around the nation, when they hear any act in furtherance of, it's accepted that people understand that the act in furtherance of must follow the beginning of the crime. I would like to move on to the harmlessness argument. Well, the district court just quoted the form instruction, model instruction. Yes, it was taken verbatim. It didn't go any further. Yes. I'd like to move on to our harmlessness argument. Now, my friend stood here and said, well, you know, the government says that everything, that every gift letter related act must have taken place between two dates. He says, however, they argued that it could have taken place on February 16th. We know that's false. The underlying facts are actually undisputed. Marilyn Mosby first learned that she needed to raise another $5,000 on February 2nd, 2021, when her broker, Gilbert Bennett, said she needed the money. On February 9th, 2021, he sent her the gift letter, and by February 10th, she had filled it out, signed it, and sent it to the mortgage lender. And we know that because that is when the gift letter first appears within her mortgage file, and that is when the mortgage lender cleared her application to close, and that was the entire purpose of it. There is no basis for my friend's speculation, which is that the jury could think that she submitted the letter on February 16th after her application was already cleared to close. All the evidence showed that the purpose of the letter was to get that application cleared to close. And I'd like to make this point perfectly clear, and this is why no matter what error one might think there is in the jury instruction, it was harmless beyond a reasonable doubt. It's harmless to whatever standard you want. There was simply no evidence showing that Maryland was an improper venue for this crime. Given that, we know that everything Marilyn Mosby did with the gift letter took place on two dates, February 9th and February 10th, and other than my friend saying February 16th, that is otherwise just uncontested. It was a finding by the district court that was sent on February 10th. He doesn't argue that's clear error. So that is what we're dealing with. Marilyn Mosby lived in Baltimore. She worked in Baltimore. She was the elected state's attorney in Baltimore, and she spent virtually all of her time in Baltimore. We know this by looking at her bank record. She was a very active user of her check card or debit card. And it shows that for the two months preceding February 9th and February 10th, she didn't leave Baltimore once. She didn't have a single in-person purchase outside of Baltimore. Instead, she has a string of purchases within Baltimore. She had one a couple of days before she sent the gift letter to the mortgage lender. She had one several days after she sent the gift letter to the mortgage lender. And as we noted, the 8th Circuit in a case called Johnson, looking at absolutely the same facts, held that as a sufficient basis for the jury to find venue. But what is more, the evidence of venue here is stronger because the defendant in Johnson, between the two days earlier making a bank transaction in Minnesota and six days later making one in Minnesota, the defendant had left Minnesota for South Dakota, and the court still held that was a sufficient basis to find venue. Here there is no evidence that Marilyn Mosby left Maryland, none whatsoever. And I'm not trying to shift the burden. I'm simply trying to say if my friend wants to say that the jury had any basis to find that venue was improper outside of Maryland, you would think he would have pointed to one thing by now, showing that Marilyn Mosby had left the state of Maryland in early February 2021. He has pointed to nothing. So as a result, the jury looking at the evidence, there was only one proper decision as to whether venue was appropriate in Maryland, and it was. I'd like to now quickly move to use evidence and forfeiture. As to use evidence, Judge Niemeyer, as you point out, clearly the reason why or how Ms. Mosby used the funds that she obtained by perjury was relevant. As you said, it completes the story. My friend says, well, the judge couldn't have relied on that because the government didn't argue it below. But I'm not here to uphold the government's arguments. It's to uphold Judge Grigsby's decision. And I think it's perfectly intuitive for Judge Grigsby to look at this. She simply said, of course it's relevant. And she's not bound by whatever reasons the party gives the judge. And in fact, any trial judge knows this. Very often they will be faced with a request by a party. And without even asking the other party for the response, they'll make a decision. So you're absolutely right. Not only does it complete the story, not only does it show motive, but it was also deeply relevant to whether Ms. Mosby had suffered an adverse financial consequence. And by the way, my friend said that allowing in this evidence allowed for some sort of wealth-based prejudice. I would ask the court to look at Docket Entry 296, pages 11 through 13. That's relevant because Judge Grigsby actually put guardrails on the evidence after it came in. The government couldn't say these were luxury properties. The government couldn't show any photos of the properties. The government couldn't provide any description of the properties. And the reason why is Judge Grigsby wanted to make sure that the kinds of prejudice my friend is talking about wouldn't happen. The error that he's claiming this is a motion in limine is simply the evidence coming in. Now my friend says that he can try to point to what he claims are errors that occurred at trial to show that letting in the evidence was harmful. But I'm unaware of any case that says that a judge's motion in limine could have been incorrect based upon things that are done at trial months later where there was no objection. You know, the onus is actually on my friend to argue how that's possibly proper. And finally, for fortfurture, my friend did not argue the statutory claim. He simply argued the Eighth Amendment. And here I would ask the court to look at its decision in Gilliarum. In Gilliarum, the court said in a single defendant case, it is virtually impossible for a defendant to argue that having to forfeit the proceeds of her crime is grossly disproportionate under the Eighth Amendment. That's because the purpose of forfeiture is to make sure that crime doesn't pay. How much was the offense conduct in that case? Here it was $5,000. No, Your Honor. Here the offense conduct was roughly $430,000. That she was convicted of. What was she convicted of? So she was convicted of mortgage fraud. And what's the $5,000? So the $5,000 was the amount of the gift letter. Right. Is that what she was convicted of? Yes. But when you look at what were the proceeds of that crime, the case law isn't you look at the $5,000. Imagine, you know, she was also charged with lying about her liabilities. So, you know, if there's no numeric value for the liability, she just lied by taking the money. You said charged with. Was she convicted of that in this case? No, Your Honor. I'm simply making the point. You're talking about relevant conduct for the? No, no, no, Your Honor. I'm simply trying to point out that when we are looking at what the proceeds were, you don't look at the amount of the gift letter. You look at the amount of the mortgage she obtained. And the amount of the mortgage she obtained is $430,000. So and the fraud, the fraudulent letter was $5,000. The fraudulent letter. But for that she got the 400 and whatever amount you're saying. Exactly. It's by using that that she got the mortgage. And I'd like to point out one last thing. Judge Niemeyer, you had a decision two years ago, United States against Toby. It's 85 F. 4th 190. And there you point out that if a defendant receives a fine that is within the statutory range and the guidelines range, if the defendant does not argue that the statute allows for, you know, Eighth Amendment violations and that the guidelines are too high, that it leads to an Eighth Amendment violation, they cannot claim that something that falls within their guidelines, which is presumptively reasonable, is an Eighth Amendment violation. You said it didn't even get off the ground. And I think that applies here. There's a lot more to cover. But this is merely touch upon what my friend decided to spend his opening on. If the court has no further questions, we'd ask the court to affirm. Thank you. All right. Mr. Baldrick. As Mr. Borenstein says, we're trying to overturn the model instruction. We most certainly are not, as I think Judge Agee was getting at. That was going to be my first question. Are you trying to go to a judge? Yeah. A model instruction is just that, a model instruction. And it is appropriate for some circumstances and not appropriate for others. And it happens every day in district courts around the country that they modify a model instruction based on the facts and circumstances of a particular case. Let's talk about what's actually trying to be overturned here. It's Riaz. He said that. He was asked, do you think Riaz is wrong? He said, yes. This court is bound by Riaz. His answer is, well, it was abrogated by the Supreme Court in Williams. But if you focus at Riaz, Riaz assessed, in order to make a determination of venue, assessed the elements. And the element required receipt. And receipt was out of state. And that's fair enough. But then the Supreme Court focused on two elements. And my suggestion, under this same type of language, and my suggestion is if we focus on the elements, this is a perfectly appropriate unless there was strong evidence of other conduct taken in preparation, which was not. We have a lot of cases where instructions are requested in view of the evidence in a particular case. Otherwise, we go to the general instruction. And in this case, the elements were given on the very same page or the very next page after he addressed the venue and lays out the four elements. And one of the four elements was the signing of that application, which puts it in Maryland. There is no evidence about the fact that she sat at a table or she went into a particular, somebody called her here and that was important. There's no preparatory evidence about signing it. They said she signed that paper in Baltimore. And, of course, then the other elements come involved. She has to also transmit it. But one of the elements, essential elements, took place in Maryland, which is in furtherance of it. I don't think Riaz has to be read inconsistent. Let me try to persuade you, Judge Niemeyer, and your honors. The court, Mr. Bornstein, talked about Riaz being atextual and the language here being different from there. Let me try to speak to it more directly if I'm understanding your question, Judge Niemeyer. The crime in Riaz was exactly the same conduct crime as here, and I'll spell it out, knowingly making a materially false statement for the purpose of influencing a financial institution in connection with a loan or application. That's exactly what's in the first sentences of Riaz and it's exactly what happened here. So it was not about receipt, Judge Niemeyer. What it said was communicating. If that's so, then what Riaz focused on was receipt. I don't think—well, no. What Riaz focused on, Judge Niemeyer, was communicating the false statement, making the false statement. It used the word make. No, it didn't say it focused on where it was received. No, I respectfully have to disagree. They were received and made in the same—I mean, they were communicated and received in the same place. So Riaz didn't have to get into this distinction of submitted in one place and received in another. But it is exactly the same crime. Where was the false statement communicated? The instruction here allowed the jury to find venue not based on where the false statement was communicated. Of course, that's not an element here. That is one element, but that's not one of the four. I mean, that's not all the four. The four—communication—state was submitted to the—that's the fourth element. Submission. Not signing. Submission of the gift letter. The first element is the making of the statement. The second one is acted knowingly. That's the mens rea. The third one is that it was made for a purpose. And fourth one, that it was submitted. As Mr. Bornstein explained, the crime here is making the false statement. And Riaz explained that you make the false statement for venue purposes when it is communicated and, in that case, also received. What do you take to be the—do you think the court misinstructed the jury on these four elements? I didn't see you objecting to it. No, we are not challenging the elements. We are challenging— Well, it seems to me it's clear that venue, under any case law or any interpretation, venue can take place where any element is committed of the offense. Right? Not under Riaz. I mean, Riaz says that where venue is proper for this offense— So you're saying that the law that requires—that allows venue to be lodged where any one element of the offense is committed. You say that's wrong? No, I'm not challenging that. Supreme Court law. I'm not challenging that. I am challenging the jury—the instruction allowed the jury to find venue where a preparatory act occurred directly contrary to both Riaz and Sterling. Now, on harmlessness, Judge Stacker, you asked him, how can you say preparatory acts and act in furtherance, you know, don't include preparatory acts when you argued the opposite to the jury. He didn't answer. And I don't know the answer. But that shows both the error and why the error was harmful. Now, he said the record is absolutely clear. It couldn't have been submitted by Ms. Mosby in person. He didn't cite anything in the record. He said it's clear that the gift letter was already in the mortgage file as of February 10th. Look at page 130 of the supplemental appendix. They put it in. This is a letter about what's in the mortgage file as of February 10th. It is dated. It is a list of enclosed documents. The gift letter is not there. There is nothing. We don't even know. There were so many gaps in the government's presentation here. We don't even know how the gift letter was submitted, by e-mail, by U.S. mail, in person, by FedEx, something else. There is nothing to exclude that it was brought with her to Florida. He says Mr. Volchak hasn't pointed to anything about her ever leaving Maryland. It's undisputed. It is in the record. In the same credit card statements they point to that she had a Spirit Airlines charge on February 16th and then charges in Florida starting on February 16th. The closing was on February 19th. The Spirit charge was made in Maryland, right? I don't know the answer to that question, Judge, but I don't believe it was. But in any event, she clearly went to Florida on the 16th for the closing. I didn't even understand that prior to Mr. Bornstein's argument for that to have been disputed. There is nothing that would preclude a jury from finding that she submitted the letter then. I agree. My question to you is your extension of the principle that venue lies. I think we have a bunch of cases, and I haven't pulled them up because I wrote one several years ago, where any element of defense is committed, venue will lie. Conduct committing any element, not preparatory, but an element of the offense. And so it's very relevant to look at the elements of offense in connection with deciding a venue question. The elements of the offense here, and Mr. Bornstein said it, there are two elements, making the false statement with the intent. There are four elements. They were instructed. But under the statute, it's making a false statement with the intent to influence a financial institution. And so it is the question under Reass, which analyzed that same conduct, is where was the false statement communicated? As the government argued, the jury could have found here that it was... Well, you're reducing it to one element. That has to be your argument. No, Mr. Bornstein said there are two elements, and under Reass, which analyzes... My point is this, simply, and we have a disagreement on this, I guess, but that when she signed that form, and let's assume she signed it at her desk in Maryland, at her house in Maryland, when she signed that form, she committed one element of the offense. I do respectfully disagree, Judge Niemeyer, but even if we have that disagreement, I don't know how this court could conclude that this jury presented with this evidence and these closing arguments that I've quoted to you, how this court could conclude beyond a reasonable doubt that it would have reached that finding. This is not my sufficiency argument. We've set that aside for the moment. This court, in order not to infringe her Sixth Amendment right to have this jury decide her guilt or innocence, including whether Venue was proper, this court would have to conclude that these jurors, with this closing argument from the government that focused only on Venue based on preparatory acts, nonetheless, beyond a reasonable doubt, would have found Venue had they been properly instructed. I ask the court to set aside the convictions in the forfeiture order. Thank you, Mr. Baltrug. We'll come down... Do you want a break? We're going to come down and greet counsel and then proceed on to the last case.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker